IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **PATSY CLINE ENTERPRISES, LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| **MARK BAYLISS and VISUAL LINK INTERNET, L.C.,** | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Patsy Cline Enterprises, LLC, ("Plaintiff" or the "Cline Estate") by and through counsel, files this Complaint against Mark Bayliss ("Bayliss") and Visual Link Internet, L.C. ("Visual Link") (collectively Bayliss and Visual Link are referred to herein as "Defendants") and states as follows:

### THE PARTIES

1. Plaintiff Patsy Cline Enterprises, LLC is a limited liability company organized under the laws of the State of Tennessee with its principal place of business located in Davidson County at 4050 Grays Point Road, Joelton, Tennessee 37080. All members of Plaintiff are citizens and residents of Tennessee.

2. Defendant Mark Bayliss is a citizen of Virginia whose principal residence is 2308 Middle Road, Winchester, Virginia 22601.

3. Visual Link Internet, L.C. is a limited liability company formed under the laws of the Commonwealth of Virginia. Its members are citizens of Virginia, and its principal place of business is located at 2308 Middle Road, Winchester, Virginia 22601.

## JURISDICTION AND VENUE

4. The Court has personal jurisdiction over Defendants because Defendants have sufficient contacts with this forum such that they have purposefully availed themselves of the privilege of conducting activities within this state, including a substantial part of the activities that give rise to Plaintiff's causes of action, all of which were targeted to this forum state.

5. The Court has subject matter jurisdiction over this action because it arises under the laws of the United States pursuant to 28 U.S.C. § 1331. The Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the plaintiffs and defendants and the amount in controversy exceeds $75,000. The Court additionally has subject matter jurisdiction over the state law claims asserted herein pursuant to the doctrines of pendent and supplemental jurisdiction, as they arise out of facts identical to those which form the basis for the federal claims.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL BACKGROUND

7. Patsy Cline Enterprises, LLC owns and administers the rights and intellectual property for the estate of Patsy Cline, the famous singer-songwriter and one of the most influential vocalists of the 20th century.

8. The Cline Estate operates for the benefit of Patsy Cline's heirs and is operated by its President, Julia S. Fudge, the daughter and oldest living child of Patsy Cline.

9. In this function, the Cline Estate owns all intellectual property interests and right of publicity rights in and to the "Patsy Cline" name, including "Patsy Cline" as an unregistered trademark, (the "Patsy Cline Mark").

10. Patsy Cline, and the Cline Estate as her successor, have used the Patsy Cline Mark continually in commerce as early as September 30, 1954.

11. As an artist, Patsy Cline achieved significant success, releasing multiple award-winning albums, topping the Billboard Country Chart multiple times, and being inducted as a member of the Grand Ole Opry.

12. Posthumously, Patsy Cline and the Cline Estate have also enjoyed great success.

13. In 1967, four years after her death, *Patsy Cline's Greatest Hits* was released, and by 2005, it had sold over 10,000,000 copies and was certified Diamond by the Recording Industry Association of America.

14. In 1973, Patsy Cline was the first solo female performer to be inducted into the Country Music Hall of Fame.

15. In 2017, the Cline Estate licensed the name, image, and likeness of Patsy Cline, and the Patsy Cline Mark, for the opening of a Patsy Cline Museum in downtown Nashville.

16. Bayliss, through his company Visual Link, owns and operates the website www.patsycline.com, (the "Infringing Website"). A true and accurate screenshot of the landing page for the Infringing Website, retrieved on February 23, 2021, is attached hereto as Exhibit A.

17. In addition to using the Patsy Cline Mark in its domain name, the Infringing Website prominently features Patsy Cline's name, image, and likeness, as well as a short biography of Patsy Cline.

18. Defendants present the Infringing Website in a sloppy and lackluster manner, and the Infringing Website contains outdated and inaccurate information about Patsy Cline.

19. The presentation of the Infringing Website negatively affects the goodwill of the Cline Estate, Patsy Cline's name, image, and likeness, and the Patsy Cline Mark and dilutes the same.

20. The Cline Estate has never authorized Defendants' operation of the Infringing Website, including the Patsy Cline Mark and the name, image, and likeness of Patsy Cline.

21. Upon information and belief, Bayliss and Visual Link have operated the Infringing Website since approximately 1996.

22. On the Infringing Website, Defendants' link and drive internet traffic to Visual Link, Bayliss's personal company that provides wireless broadband services in Virginia.

23. The Infringing Website states that it is "[s]ponsored & hosted by: <u>Visual Link Internet</u>". (See Ex. A).

24. By operating and linking Visual Link in this manner, Defendants commercially profit from the Infringing Website.

25. As a result, the Cline Estate notified Defendants that their operation of the Infringing Website constituted an unauthorized use of Patsy Cline's name, image, and likeness and infringement of the Patsy Cline Mark.

26. Rather than substantively responding to these claims, Defendants initially told the Cline Estate that the Infringing Website was not for sale.

27. On this same phone call with the Cline Estate, Defendants further stated that they had previously turned down an offer of $50,000, and that, if they were to sell, that they expected to sell the domain name for more than that because of the importance of the Patsy Cline name.

28. In response, the Cline Estate attempted to purchase the domain name for the Infringing Website for $5,000 through a third-party domain buying service.

29. The third-party service informed the Cline Estate that Defendants had turned down offers of $50,000 in the past and were looking for offers in excess of that amount.

30. The Cline Estate decided to not pursue purchasing the domain name through the third-party service based on this response from Defendants.

31. More than a year later, Defendants emailed the Patsy Cline Estate and said that they would be open negotiating terms of sale for the domain name for the infringing website.

32. In response, the Cline Estate asked Defendants for a specific price to purchase the Infringing Website, and Defendants declined to state a specific price, but did state that, because of the importance of the Patsy Cline name, the price tag would be substantial.

33. As a result, and, based on Defendants' continued operation of the Infringing Website, the Cline Estate issued an invoice to Defendants in the amount of $87,500 which reflects an annual licensing fee for the name, image, and likeness of Patsy Cline for the multiple years that Defendants operated the Infringing Website (the "Invoice"). A true and correct copy of the Invoice, sent from the Cline Estate in Tennessee, is attached hereto as Exhibit B.

34. The Invoice reflects a conservative estimate of the amounts owed to the Patsy Cline Estate based on the low-end of the typical licensing rate for the name, image, and likeness of Patsy Cline and the Patsy Cline Mark, and a conservative estimate of the length of time that the Defendants have operated the Infringing Website.

35. Defendants never responded to the Invoice.

36. On March 31, 2021, the Cline Estate again reached out to Defendants, now through counsel, and re-raised the issues with the Infringing Website (the "March 31 Letter"). A true and correct copy of the March 31 Letter is attached hereto as Exhibit C.

37. In the March 31 Letter, the Cline Estate demanded that Defendants cease use of the Infringing Website and compensate the Cline Estate for their unauthorized use of the name, image, and likeness of Patsy Cline and for their infringement of the Patsy Cline Mark.

38. The Cline Estate also noted in the March 31 Letter that failure to comply with the terms of their request would be further evidence of the willful nature of Defendants' infringement and could result in litigation.

39. In response, Defendants directed further communications to the forum state through an email from Bayliss to the Cline Estate on April 13, 2021, asserting that they did not operate the Infringing Website.

40. Instead, Defendants alleged, that the Infringing Website was operated by Celebrating Patsy Cline, Inc., ("Celebrating Patsy") a nonprofit group committed to preserve and perpetuate the legacy of Patsy Cline, based out of her hometown of Winchester, VA.

41. In a further attempt to mislead the Cline Estate about the true ownership of the Infringing Website, Bayliss directed additional communications to the forum states by multiple phone calls with the Cline Estate and its counsel in the intervening time, further alleging that Celebrating Patsy was the true owner and operator of the Infringing Website.

42. Despite the fact that Defendants had previously represented that they owned the Infringing Website, and based on Defendants' assertions, the Cline Estate reached out to Karen Helm, President of Celebrating Patsy, about the Infringing Website.

43. Ms. Helm informed the Cline Estate that Celebrating Patsy was completely uninvolved with the operation of the Infringing Website.

44. On April 20, 2021, Celebrating Patsy wrote to the Cline Estate and corroborated the contents of this phone call (the "April 20 Letter"). A true and correct copy of April 20, 2021, letter is attached hereto as Exhibit D.

45. In the April 20 Letter, Celebrating Patsy stated that "it does not have control of or access to the [Infringing Website,]" that it "neither contribute[s] to the content nor ha[s] administrative login privileges to the [Infringing Website,]" and that it "do[es] not own the URL address [for the Infringing Website]."

46. Based on this information, the Cline Estate decided to follow up with the Defendants regarding the Infringing Website.

47. On April 26, 2021, the Cline Estate, through counsel, again wrote to the Defendants, informing them that the information they provided in response to the March 31 Letter regarding Celebrating Patsy's operation of or involvement with the Infringing Website was false (the "April 26 Letter"). A true and correct copy of the April 26 Letter is attached hereto as Exhibit E.

48. In the April 26 Letter, the Cline Estate forwarded the April 20 Letter from Celebrating Patsy.

49. The Cline Estate also noted that Celebrating Patsy was completed uninvolved with the Infringing Website and lacked the ability to access, control, or remove the Infringing Website.

50. The Cline Estate also renewed the demands contained in the March 31 Letter in the April 26 Letter.

51. Defendants declined to transfer the Infringing Website to the Cline Estate, permanently delete the Infringing Website, or take such other action to negotiate the end of the dispute between the parties in response to this correspondence from the Cline Estate.

52. Instead, Defendants have temporarily taken down the Infringing Website so that, when searched, the Infringing Website now merely states that "[t]his Account has been suspended." A true and accurate screenshot of the landing page for the Infringing Website, accessed on June 18, 2021, is attached hereto as Exhibit F.

53. The temporary removal of the Infringing Website has further harmed the Cline Estate.

54. Rather than showing no search result or routing a searcher to an active and authorized website affiliated with the Cline Estate, this temporary measure by Defendants to restrict access to the Infringing Website further tarnishes the reputation of the Cline Estate and the name, image, and likeness of Patsy Cline, and dilutes the Patsy Cline Mark.

55. After being informed via the April 26 Letter that the Cline Estate was going to enforce its rights, Defendants have subsequently contacted the Cline Estate with offers to sell the Infringing Website, now at a lower price in an attempt to avoid litigation.

56. Based on Defendants' prior misconduct, the Cline Estate has little reason to trust that Defendants' revised offer is anything less than a last-ditch attempt to avoid the legal ramifications of their infringement of the Patsy Cline Mark and their misappropriation of the name, image, and likeness of Patsy Cline.

57. Defendants have failed to account to the Cline Estate for their unauthorized use of the name, image, and likeness of Patsy Cline or for their infringing use of the Patsy Cline Mark.

58. Likewise, Defendants have refused to permanently take down or transfer the Infringing Website to the Cline Estate.

59. The Cline Estate has been left with no choice but to seek the Court's intercession, and assert the following claims against Defendants:

## COUNT I – TRADEMARK INFRINGMENT UNDER 17 U.S.C. § 1125(a)

60. The allegations contained in Paragraphs 1 through 59, inclusive, are incorporated herein by reference and made a part of this Count as if fully set forth herein.

61. Defendants' unauthorized use of the Patsy Cline Mark in commerce is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with the Cline Estate, and is likely to cause confusion as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by the Cline Estate.

62. Additionally, Defendants' unauthorized use of the Patsy Cline Mark misrepresents the nature, characteristics, qualities, or geographic origin of their goods, services, or commercial activities.

63. The Patsy Cline Mark is inherently distinctive, and therefore, immediately protectable upon proper use as a mark.

64. The Cline Estate, and its predecessors, have used the Patsy Cline Mark in commerce since at least September 30, 1954.

65. The Cline Estate has been damaged by Defendants' unauthorized use of the Patsy Cline Mark.

66. Accordingly, pursuant to 17 U.S.C. § 1125(a), the Cline estate is entitled to injunctive relief to prevent such further infringement by Defendants.

## COUNT II – TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(c)

67. The allegations contained in Paragraphs 1 through 66, inclusive, are incorporated herein by reference and made a part of this Count as if fully set forth herein.

68. The Cline Estate owns the Patsy Cline Mark.

69. The Patsy Cline Mark is famous under federal law, as set forth in 15 U.S.C. § 1125(c).

70. The Patsy Cline Mark is inherently distinctive, and therefore, immediately protectable upon proper use as a mark.

71. The Cline Estate, and its predecessors, have used the Patsy Cline Mark in commerce since at least September 30, 1954.

72. Defendants' use of the Patsy Cline Mark in connection with the Infringing Website, without the authorization of the Cline Estate, is likely to cause and has caused dilution by blurring or dilution by tarnishment of the Patsy Cline Mark.

73. Defendants commenced their unauthorized use of the Patsy Cline Mark in commerce after the mark became famous.

74. Accordingly, the Cline Estate is entitled to injunctive relief to prevent such further unfair and deceptive acts and practices by Defendants.

**COUNT III – VIOLATION OF THE TENNESSEE TRADEMARK ACT**

75. The allegations contained in Paragraphs 1 through 74, inclusive, are incorporated herein by reference and made a part of this Count as if fully set forth herein.

76. The Cline Estate owns the Patsy Cline Mark, which is famous in Tennessee, as set forth in Tenn. Code Ann. § 47-25-513.

77. The Patsy Cline Mark is inherently distinctive, and therefore, immediately protectable upon proper use as a mark.

78. The Cline Estate, and its predecessors, have used the Patsy Cline Mark in commerce since at least September 30, 1954.

79. Defendants' use of the Patsy Cline Mark in connection with the Infringing Website, without the authorization of the Cline Estate, is likely to and has caused dilution of the distinctive quality of the Patsy Cline Mark.

80. Defendants willfully intended to trade on the reputation of Patsy Cline by their use of the Patsy Cline Mark, and Defendants' unauthorized use of the Patsy Cline Mark occurred after the mark became famous.

81. Accordingly, Defendants are liable to the Cline Estate for its actual damages, disgorgement of Defendants' profits, treble damages, injunctive relief to prevent such further unfair and deceptive acts and practices by Defendants, and its attorneys' fees.

## COUNT IV – UNFAIR COMPETITION

82. The allegations contained in Paragraphs 1 through 81, inclusive, are incorporated herein by reference and made a part of this Count as if fully set forth herein.

83. Defendants have used, without the Cline Estate's authorization, the Patsy Cline Mark and represented to the public that the Infringing Website is consistent with the reputation which the public associates with the Patsy Cline Mark.

84. The Cline Estate, and its predecessors, have used the Patsy Cline Mark in commerce since at least September 30, 1954.

85. Defendants have further used the Patsy Cline Mark to market the Infringing Website without authorization from the Cline Estate in an attempt to "pass off" its organization or services as that of the Cline Estate.

86. Defendants' wrongful use of the Patsy Cline Mark to compete with the Cline Estate is in violation of Tennessee law.

87. Defendants operated the Infringing Website with the intend to deceive, and have deceived, the public as to the source of the services it provided or to the authority of its organization.

88. Accordingly, Defendants are liable to the Cline Estate for all damages occasioned by its tortious action, and for injunctive relief.

**COUNT V – VIOLATION OF THE FEDERAL ANTICYBERSQUATTING CONSUMER PROTECTION ACT**

89. The allegations contained in Paragraphs 1 through 88, inclusive, are incorporated herein by reference and made a part of this Count as if fully set forth herein.

90. In a bad faith intent to profit from the Patsy Cline Mark, Defendants have registered, trafficked in, and used the Patsy Cline Mark through the Infringing Website with the domain name www.patsycline.com, without authorization of the Cline Estate.

91. The Patsy Cline Mark is inherently distinctive, and therefore, immediately protectable upon proper use as a mark.

92. The Cline Estate, and its predecessors, have used the Patsy Cline Mark in commerce since at least September 30, 1954.

93. The Patsy Cline Mark is famous and was famous at the time of the registration of the domain name of the Infringing Website.

94. The domain name of the Infringing Website is identical to, confusingly similar to, and dilutive of the Patsy Cline Mark.

95. Accordingly, Defendants are liable to the Cline Estate for its actual damages, disgorgement of profits, or, alternatively, pursuant to 15 U.S.C. § 1117(d), statutory damages up to one hundred thousand dollars ($100,000).

96. Additionally, pursuant to 15 U.S.C. § 1125(d)(1)(C), the Cline Estate seeks a Court order for transfer of the domain name of the Infringing Website—www.patsycline.com—to the Cline Estate or, in the alternative, the forfeiture or cancellation of that domain name.

**COUNT VI – VIOLATION OF THE TENNESSEE PROTECTION OF PERSONALIZED RIGHTS ACT, TENN. CODE ANN. § 47-25-1101, *ET SEQ.***

97. The allegations contained in Paragraphs 1 through 96, inclusive, are incorporated herein by reference and made a part of this Count as if fully set forth herein.

98. Without the consent of the Cline Estate, Defendants have used the name, image, and likeness of Patsy Cline in connection with the Infringing Website as an item of commerce for purposes of advertising his products, merchandise, goods, or services.

99. Tenn. Code Ann. § 47-25-1103 provides each individual with a property right in the use of that person's name, photograph, or likeness in any medium in any manner.

100. This property right is freely assignable and licensable and does not expire upon the death of an individual, but is descendible to the individual's executors, assigns, heirs, or devisees.

101. The Cline Estate has been assigned the property rights for the name, photograph, and likeness of Patsy Cline.

102. Tenn. Code Ann. § 47-25-1105 provides that:

> Any person who knowingly uses or infringes upon the use of another individual's name, photograph, or likeness in any medium … as an item of commerce for purposes of advertising products, merchandise, goods, or services … without … in the case of a deceased individual, the consent of the executor or administrator, heirs, or devisees of such deceased individual, shall be liable to a civil action.

103. Accordingly, the Cline Estate is entitled to its actual damages, disgorgement of Defendants' profits, treble damages, and injunctive relief to prevent such further unfair and deceptive acts and practices by Defendants pursuant to Tenn. Code Ann. § 47-25-1106.

13 of 16

Case 3:21-cv-00518   Document 1   Filed 07/07/21   Page 13 of 16 PageID #: 13

## COUNT VII – VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT, TENN. CODE ANN. § 47-18-101, *ET SEQ.*

104. The allegations contained in Paragraphs 1 through 103, inclusive, are incorporated herein by reference and made a part of this Count as if fully set forth herein.

105. As stated herein, Defendants have willfully engaged in unfair and deceptive acts and practices in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*

106. Defendants' conduct includes: (1) falsely passing off his goods or services as those of the Cline Estate; (2) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of his goods or services; (3) causing likelihood of confusion or misunderstanding as to the affiliation, connection or association with, or certification by, the Cline Estate; (4) representing that his goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have; and (5) representing that his goods or services are of a particular standard, quality or grade, or that his goods are of a particular style or model, if they are of another.

107. These unfair and deceptive acts and practices are in violation of Tennessee law, Tenn. Code Ann. § 47-18-104.

108. Accordingly, pursuant to Tenn. Code Ann. § 47-18-109, the Cline Estate brings this action to recover its actual damages, treble damages, injunctive relief to prevent such further unfair and deceptive acts and practices by Defendants, and its attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment of the Defendants as follows:

1. For injunctive relief, pursuant to Counts I-VII, to prevent Defendants from continued infringement of the Patsy Cline Mark and his associated unfair and deceptive acts and practices; and

2. For an order from the Court transferring the domain name of the Infringing Website—www.patsycline.com—to the Cline Estate pursuant to Count V and 15 U.S.C. § 1125(d)(1)(C); and

3. In the alternative, the forfeiture or cancellation of the Infringing Website—www.patsycline.com—pursuant to Count V and 15 U.S.C. § 1125(d)(1)(C); and

4. For compensatory damages; and

5. In the alternative under Count V, for statutory damages up to one hundred thousand dollars ($100,000) pursuant to Count V and 15 U.S.C. § 1117(d); and

6. For disgorgement of Defendants' profits, pursuant to Counts III, V, and VI; and

7. For treble damages, pursuant to Counts III, VI, and VII; and

8. For its attorneys' fees for bringing this action, pursuant to Counts III and VII; and

9. That Defendants be held jointly and severally liable for the Cline Estate's damages; and

10. For the costs of this cause, and

11. For such other and further General Relief as may be appropriate.

**JURY DEMAND**

Plaintiff demands a jury.

This the 7th day of July 2021.

                        Respectfully submitted,

                        */s/ Jacob Clabo*
                        Jay S. Bowen, TN BPR No. 2649
                        Lauren Spahn, TN BPR No. 32377
                        Jacob Clabo, TN BPR No. 36760
                        Shackelford Bowen McKinley & Norton, LLP
                        1 Music Circle South, Suite 300
                        Nashville, TN 37203
                        Tel: (615) 329-4440
                        Fax: (615) 329-4485
                        jbowen@shackelford.law
                        lspahn@shackelford.law
                        jclabo@shackelford.law

                        *Attorneys for Plaintiff Patsy Cline Enterprises, LLC*